## W. D. Thompson *v.* Mary Fenley.

**Estoppel—Defense by Maker.**

The payor of a note is not estopped to make defense to a note because of the statement made to the payee or to the payee's agent that the note was "all right."

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 10, 1873.

Opinion by Judge Lindsay:

If the note sued on in this action still belonged to Pearson, the payee, it is manifest that Thompson would have the right to demand that the mortgage lien owned by Mayo should be extinguished, before judgment should go against him for the balance now in litigation, unless Pearson could show that it was part of the contract between himself and Thompson that the latter, in addition to the two notes for three thousand dollars each, was also to pay off and satisfy the mortgage debt.

The acceptance of a deed with general warranty would not preclude Thompson in a contract with Pearson, the latter being insolvent, from demanding a clear and unencumbered title before paying the purchase money, and the right to make this demand would not depend upon Thompson's knowledge of the defect of title, nor of Pearson's insolvency at the time of the acceptance of the deed, but upon the existence of the defect and the insolvency at the time Pearson should seek a specific execution of the contract of purchase,

i. e., the payment of the purchase money. The distinction between this and the case of Craddock v. Shirley is that Craddock was seeking the active interposition of the chancellor, in his behalf, while Thompson merely asks that the chancellor shall not interfere in behalf of Pearson because to grant the relief asked will work unnecessary injustice to him.

The distinction between the case of a plaintiff seeking a specific performance in equity and a defendant resisting such performance is well defined and universally recognized. Story's Equity Jurisprudence, Sec. 769. *Hatcher and Wife v. Andrews, etc.,* 5 Bush 561. There is no proof conducing to show that Thompson agreed to pay off the mortgage debt. The recital in the deed that three thousand dollars were paid in cash, when in point of fact no such payment was made, is a circumstance from which the inference might be drawn, that something more than six thousand dollars, the amount of the two notes, was to be paid for the property, but in the absence of direct evidence that such was the case, and in view of the positive and uncontradicted statements of Thompson to the contrary, this inference cannot be allowed to charge him with the payment of this mortgage debt.

The testimony of Mayo establishes only, that Thompson told him that his claim would be paid when the arrangement for the purchase was consummated, or that Thompson had loaned or expected to advance some money to Pearson to enable him to release the mortgage lien. This evidence rather tends to rebut the presumption that Thompson was himself to satisfy the mortgage, and harmonizes with his statement, that Pearson agreed to pay money out of the first moneys realized by a sale of the notes. The evidence of Davis also conduces to show that Pearson had made this agreement. He states that in the conversation he had with Thompson, when contracting for the property, the latter informed him that Pearson had promised to pay off Mayo's mortgage, but that he did not know whether he had done so or not.

Thompson did not state to Davis that he would lose money on the property in selling it for $8,500.00, but that, if he had to pay off the mortgage, the paving claims, and the full amount of the note sued on in this claim, that he would in that event lose money.

So far we have considered this case as though Pearson was the plaintiff. As to the matters considered, Mrs. Fenley occupies no

more favorable attitude than he would have occupied.  The assignment to her did not impair Thompson's right to any defense, discount or offset he might have used against Pearson.  It remains now to be determined whether Thompson is estopped to make the defense relied on and whether he, by promises to pay the note, prevented Mrs. Fenley from discounting it, and thereby placing it upon the footing of a bill of exchange.  The only statement made by Thompson before the purchase of the note by appellee, from which it could possibly be inferred that he had no defense, set-off or counterclaim, upon which he could or would rely to defeat its collection, was the conversation with Green, the clerk of Morton Gault & Co., with whom Pearson had left the note to be sold.  When asked by Green if the note was all right, Thompson replied, "Of course it is all right, if I had not thought it was all right, I would not have given my notes."  Green did not tell Thompson the name of any person who was negotiating for the note, nor did Green ask for, or Thompson give him authority to repeat this conversation to persons to whom he might offer to sell it.  Green was the agent of Pearson and not of appellee.  The statement or assurances made by Thompson to Green are no more binding upon him than they would have been if made to Pearson himself.  Besides this, there is no evidence that the note was purchased upon the faith of these statements.  Green states that Fenley, the agent of appellee, said to him, that relying upon Thompson's representations he would buy the note, but Fenley's deposition is not taken, and we have no means of knowing whether he relied on these representations or upon his own judgment.  In the case of *Smith v. Stone,* 17 B. Monroe 168, the assignee purchased the note in consequence of representations made to *his* agent.  In the case of *McBrayer v. Collins,* the payor of the note represented to the assignee himself that it was good.  We have found no case in which the payor has been estopped to make defense because of statements made to the payee, or to the payee's agent, and conceive that the doctrine will never be carried to that extent, unless it can be shown that he constituted them his agents and expressly authorized them to repeat his statements to persons to whom they might propose to sell the note.  No such express agency can be inferred from the street conversation between Thompson and Green.  It is therefore immaterial so far as Thompson's legal rights are concerned, whether Fenley did or not rely on the statements made to Green.

There is absolutely no proof conducing to show that Thompson promised to pay the note after the assignment, except what he himself says as to his conversation with the cashier of the Farmers & Doover Bank, when the note was left for collection.

A day or two before it became due he "asked if the bank had discounted it, and if so, whether it could be renewed. The reply was that the bank had not discounted it, but that Mr. Abbott had left it there and to see him."

He went again on the day the note was due "and .was told that Mr. Abbott had said the note could not be renewed by my giving security." From this it is clear that Thompson did not agree to pay the note, and did nothing calculated to prevent appellee from discounting it. Nor does it matter that Thompson did not see Abbott about the renewal as he (Abbott) had left word at the bank that he would not be permitted to renew it.

We are of opinion that Thompson has made out a good defense to so much of the note as is now being litigated, and that he has been guilty of no act that estops him from relying upon such defense. There are other matters canvassed by counsel, but as they are not material to the issues involved, they will not be considered by the court.

For the reasons indicated the judgment is *reversed* and the cause remanded, with instructions to sustain Thompson's defense.

*Bullitt, Booth, for appellant.*

*Seymour & Abbott, for appellee.*